# UNITED STATES DISTRICT COURT
for the
### Eastern District of Kentucky
### London Division

| | |
|---|---|
| Carrie A. Lunsford ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| Experian Information Solutions, Inc. ) | |
|     *Defendant* ) | |
| Serve: ) | |
|     CT Corporation System ) | |
|     306 West Main Street, Suite 512 ) | |
|     Frankfort, KY 40601 ) | |
| ) | |
| Phoenix Financial Services, LLC ) | |
|     *Defendant* ) | |
| Serve: ) | |
|     Kimberly England ) | |
|     Phoenix Financial Services, LLC ) | |
|     8902 Otis Avenue, Suite 103A ) | |
|     Indianapolis, IN 46216 ) | |
| ) | |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which was enacted to eliminate abusive debt collection practices by debt collectors; and the Fair Credit Reporting Act, 15 U.S.C. § 1692 et seq. ("FCRA"), which was enacted to ensure fairness, accuracy and privacy of the personal information contained in the files of the credit reporting agencies.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k, FCRA, 15 U.S.C. §1681p, and 28 U.S.C. § 1367. Venue is proper, because Plaintiff resides in Laurel County, Ky. and the nucleus of relevant facts and events giving rise to Plaintiff's claims as a consumer,

and her damages, occurred within Laurel County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Carrie A. Lunsford is a natural person who resides in Laurel County, Ky. Ms. Lunsford is a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c), and the FDCPA, as defined at 15 U.S.C. § 1692a(3).

4. Defendant Experian Information Solutions, Inc. is a foreign corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626. Experian has registered to do business with Kentucky Secretary of State. Experian is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

5. Defendant Phoenix Financial Services, LLC ("PFS") is a foreign limited liability company with its principal place of business located at 8902 Otis Avenue, Suite 103A, Indianapolis, IN 46216. PFS has not registered to do business with the Kentucky Secretary of State. PFS is a furnisher of credit information and user of consumer reports within the meaning of the FCRA, and a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

**I. Facts Relating to Experian Information Solutions, Inc.**

6. On June 19, 2008, the Kentucky Department of Revenue recorded a Notice of Lien with the County Clerk of Laurel County, Kentucky against Plaintiff Carrie A. Lunsford ("Lunsford") regarding unpaid Kentucky taxes (the "Tax Lien"). The Tax Lien was recorded by the Laurel County Clerk in Book 78, Page 519 of its encumbrance records.

7. Ms. Lunsford promptly paid the tax debt at the basis of the Tax Lien to the Kentucky Department of Revenue, and the Kentucky Department of Revenue recorded a Certificate of Release of Lien with the Laurel County Clerk on August 8, 2008 (the "Tax Lien Release"). The Tax Lien Release was recorded by the Laurel County Clerk in Book 79, Page 476 of its encumbrance records.

8. The Tax Lien Release was, and is, a public record that is freely and readily available to all.

9. In July 2017, almost nine years later, Ms. Lunsford reviewed her consumer credit report from Experian Information Solutions, Inc. ("Experian") as part of an attempt to improve her credit.

10. To her great frustration and dismay, Ms. Lunsford discovered that Experian was still reporting in July 2017 that the Tax Lien remained unsatisfied and was still due and owing.

11. Even though the Tax Lien was paid and released, Experian willfully or recklessly or negligently failed to update the information it reported, and continues to report, on Ms. Lunsford's consumer credit report, to accurately reflect that the Tax Lien had been paid and released.

12. As a result of the inaccurate credit information reported by Experian due to its willful or negligent failure to maintain reasonable procedures to assure maximum possible accuracy, Ms. Lunsford was denied credit and financing, or received credit on less favorable terms, because of inaccurate credit information published by Experian in connection with the paid and released Tax Lien. In particular, Experian falsely and incorrectly published to one or more of its subscribers and users of its consumer reports that the Tax Lien was unpaid and unreleased and that positive balances were still owed on the Tax Lien.

13. Experian's reporting that the Tax Lien was unpaid and unreleased was inaccurate and violated 15 U.S.C. § 1681e(b). Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Lunsford's credit reports and credit files it publishes and maintains concerning Ms. Lunsford. If Experian had reasonable procedures in place, Experian would have discovered the filed the Tax Lien Release *before* publishing Ms. Lunsford's credit report to its subscribers and users of its consumer reports in connection with Ms. Lunsford's loan and credit applications.

14. Experian failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Lunsford and the Tax Lien.

15. Upon information and belief, Experian has a routine, systematic procedure to carefully gather and report derogatory judgments and liens entered against consumers in the consumer reports that it furnishes to users of their consumer reports, but Experian does not have the routine, systematic procedures to gather and report information from the same courts for judgments and liens when they become paid and released to assure maximum possible accuracy.

16. Experian willfully or negligently failed to use and maintain the necessary procedures to assure maximum possible accuracy of the public-record information section of Ms. Lunsford's consumer credit reports that it published to third-party users and subscribers. Consequently, Experian reported materially false and inaccurate negative credit information concerning Ms. Lunsford's paid and released Tax Lien, *i.e.* Experian falsely reported that the Tax Lien remained unreleased and due and owing *after* recording of the Tax Lien Release with the Laurel County Clerk.

## II. Facts Relating to Phoenix Financial Services, LLC

17. Ms. Lunsford is keenly aware of the importance of her credit score.

18. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

19. Consequently, Ms. Lunsford routinely monitors her credit reports.

20. Ms. Lunsford recently reviewed her credit reports and discovered tradelines furnished by Phoenix Financial Services, LLC ("PFS").

---

[1.] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

21.     PFS is and was furnishing negative credit information concerning a medical debt originated by Emergency Medicine Physicians of Champaign County, LTD ("EMP").

22.     The EMP debt was a medical debt incurred for personal, family, and/or household purposes, which makes the EMP debt a "debt" within the meaning of the FDCPA.

23.     PFS furnished the negative credit information to the consumer reporting agencies ("CRA's") Equifax Information Services, LLC ("Equifax"), Experian, and Trans Union, LLC ("Trans Union") concerning the medical collection account at issue for purposes of coercing Ms. Trapp and collecting the debts from her. *Sullivan v. Equifax, Inc*., CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

24.     Ms. Lunsford did not recognize the EMP debt a debt that was currently due and owing. Indeed, she did not recognize the debt at all.

25.     On July 27, 2017, Ms. Lunsford sent dispute letters to the CRA's disputing the credit information furnished by PFS in connection with the EMP medical debt.

26.     The CRA's had an affirmative duty under 15 U.S.C. § 1681i(2) to send PFS prompt notice of Ms. Lunsford's dispute within five (5) business days of receiving the dispute.

27.     The CRA's complied with their statutory duty and sent PFS notice of Ms. Lunsford's disputes.

28.     Upon receiving Ms. Lunsford's dispute from the CRA's, PFS had a statutory under the FCRA to conduct a reasonable investigation of Ms. Lunsford's disputes and to notify the CRA's that Ms. Lunsford had disputed the EMP medical debts.

29.     After investigation of Ms. Lunsford's disputes, Trans Union and Experian deleted the PFS tradeline from Ms. Lunsford's consumer credit reports.

30.     The PFS tradeline, however, remained on Ms. Lunsford's Equifax consumer credit report.

31.     PFS failed to comply with its statutory duty to notify Equifax that Ms. Lunsford had disputed the EMP medical debt.

32.     Equifax's notice of the results of its reinvestigation results failed to note that Ms. Lunsford had disputed the EMP medical debt.

33. On September 28, 2017, sent another dispute letter to Equifax concerning the PFS tradeline for the EMP medical debt.

34. On October 30, 2017, Equifax sent Ms. Lunsford notice of the results of its investigation of the PFS tradeline for the EMP medical debt.

35. Again, Equifax's notice of the results of its reinvestigation results failed to note that Mr. Lunsford had disputed the EMP medical debt.

36. PFS violated the FDCPA by transmitting false credit information concerning Ms. Lunsford and the PFS medical debts to one or more consumer reporting agencies, and by failing to note that Ms. Lunsford had disputed the EMP medical debt.

37. PFS violated the FCRA by failing to note that Ms. Lunsford had disputed the PFS medical debt.

## CLAIMS FOR RELIEF

I. **Claims against Experian Information Solutions, Inc.**

38. Experian Information Solutions, Inc. ("Experian") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Lunsford and the paid and released Tax Lien.

39. Experian's conduct, actions and inactions were willful, rendering Experian liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Experian was on clear notice that the failure to update public records with respect to judgments and liens was problematic for Experian. Other lawsuits raising the same issue has been filed against Experian in this and other jurisdictions for the same failure.

40. In the alternative, Experian's conduct, actions and inactions were negligent rendering Experian liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## II. Claims against Phoenix Financial Services, LLC

### A. Violations of the Fair Debt Collection Practices Act

41. Phoenix Financial Services, LLC violated 15 U.S.C. 1692e(8) by furnishing credit information concerning the EMP medical debt without noting that Ms. Lunsford had disputed the two debts.

### B. Violations of the Fair Credit Reporting Act

42. Phoenix Financial Services, LLC ("PFS") violated 15 U.S.C. § 1681s-2(b). After being informed by Equifax that Connie Lunsford disputed the accuracy of the information it was providing concerning Ms. Lunsford and the EMP medical debt, PFS willfully failed to conduct a proper investigation of Ms. Lunsford's dispute filed with Equifax that PFS was furnishing false negative credit information about Ms. Lunsford and the EMP medical debt.

43. PFS willfully failed to review all relevant information purportedly provided by Equifax to PFS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

44. PFS willfully failed to direct Equifax to delete inaccurate information about Ms. Lunsford pertaining to EMP medical debt as required by 15 U.S.C. §1681s-2(b)(C) and failed to note that Ms. Lunsford had disputed the EMP medical debt as required by 15 U.S.C. § 1681s-2(b). *See Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (holding "that a private cause of action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed").

45. As a result of PFS's failure to conduct a reasonable investigation of Ms. Lunsford's dispute, Ms. Lunsford suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress.

46. Carrie Lunsford has a private right of action to assert claims against PFS arising under 15 U.S.C. §1681s-2(b).

47. PFS is liable to Connie Lunsford for the actual damages Ms. Lunsford has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

48. In the alternative, PFS's conduct, actions and inactions were negligent rendering

PFS liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carrie A. Lunsford requests that the Court grant her the following relief:

1. Award Plaintiff the maximum amount of statutory damages against both Defendants under 15 U.S.C. §1681n;

2. Award Plaintiff actual damages against both Defendants1 under 15 U.S.C. §1681n or, in the alternative, under 15 U.S.C. § 1681o;

3. Award Plaintiff punitive damages against each Defendant under 15 U.S.C. § 1681n;

4. Award Plaintiff the maximum amount of statutory damages against PFS under 15 U.S.C. §1692k;

5. Award Plaintiff actual damages against PFS under 15 U.S.C. §1692k;

6. Award Plaintiff attorney's fees, litigation expenses and costs;

7. A trial by jury; and

8. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James R. McKenzie
**James R. McKenzie**
**J. Hays Lawson**
*Credit Defense Attorneys, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel: (502) 371-2179
Fax: (502) 257-7309
james@creditdefenseky.com
hays@creditdefenseky.com